IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONALD N. HASKINS #285369,

*Plaintiff*,

v.

CORRECTIONAL OFFICER
BRIAN K. HAWK,

*Defendant*.

Civil Action No. ELH-11-2000

**MEMORANDUM OPINION**

Plaintiff Ronald N. Haskins, a prison inmate in the custody of the Maryland Division of Correction ("DOC"), filed suit concerning an incident that allegedly occurred during plaintiff's incarceration at the Western Correctional Institute ("WCI") in Cumberland, Maryland.[1] Specifically, plaintiff contends that defendant Brian K. Hawk, who was a correctional officer at WCI,[2] used unconstitutionally excessive force in restraining and strip-searching him. The Complaint (ECF 1) presents two counts against Officer Hawk.[3] In Count I, plaintiff asserts a claim under 42 U.S.C. § 1983 for violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States. *See id.* ¶ 18. In Count II, plaintiff asserts state constitutional claims under Article 24 of the Maryland Declaration of

---

[1] Mr. Haskins is now incarcerated at the Maryland Correctional Training Center in Hagerstown, Maryland. *See* ECF 25. He is represented by counsel in this case.

[2] Defendant is no longer employed by the DOC. *See* ECF 6. However, because he was a correctional officer at all times relevant, I will refer to him as "Officer Hawk."

[3] Initially, plaintiff sued Officer Hawk in both his individual and official capacities. However, plaintiff subsequently conceded that his official capacity claims against Officer Hawk are not viable and requested that they be "stricken." ECF 23 at 23. Accordingly, I need only consider plaintiff's claims against Officer Hawk in his individual capacity.

Rights.  *Id.* ¶ 20.  As to both counts, plaintiff seeks compensatory and punitive damages.  *Id.* ¶¶ 18, 20.[4]

Defendant responded to the Complaint with a pre-discovery "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (ECF 20) (collectively with its supporting memorandum, ECF 20-1, "Motion"), accompanied by exhibits.  The Motion has been fully briefed,[5] and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I will grant the Motion in part and deny it in part.

**Factual and Procedural Background**

A.  Plaintiff's Allegations[6]

Mr. Haskins alleges that on August 9, 2008, during his incarceration at WCI, two correctional officers (an "Officer Gilbert" and another officer who plaintiff does not name) "entered [his] cell and attempted to confiscate a cell phone" that was in the possession of his cell mate, Tamall Carroll.  Complaint ¶¶ 5-6, 12.  Mr. Carroll "threw the cell phone, and it hit one of the Correctional Officers in the head."  *Id.* ¶ 6.  The cell phone fell "in the vicinity of Mr. Haskins[,] who picked it up and attempted to throw it to another cell in an attempt to keep it from the officers."  *Id.*

Officer Hawk was not present when the incident involving the cell phone occurred.  *Id.* ¶ 7.  However, the other two officers restrained Mr. Haskins until Officer Hawk arrived.  *Id.*

---

[4] The Court has federal question jurisdiction under 28 U.S.C. § 1331, with supplemental jurisdiction over plaintiff's state law claim under 28 U.S.C. § 1367.

[5] Plaintiff filed an Opposition (ECF 23), with additional exhibits, and defendant filed a Reply (ECF 24).

[6] The facts presented in this section are drawn from the Complaint and are construed in the light most favorable to plaintiff.

After Officer Hawk arrived, Officer Gilbert yelled, "'man, that's assault, that's assault,'" apparently referring to Carroll's throwing of the cell phone. *Id.* ¶ 8 (quoting Gilbert).

Officer Hawk, allegedly operating under "the erroneous belief" that it was Mr. Haskins who had thrown the cell phone that struck a correctional officer, "maliciously grabbed Mr. Haskins by the head and took him down a set of stairs, away from the area." *Id.* ¶ 9.  Hawk said to Haskins, "'You like assaulting my officers?'" *Id.* ¶ 10 (quoting Hawk).  Officer Hawk then "maliciously and violently grabbed [Mr. Haskins] by the back of his neck and head area and proceeded to pull him along causing Mr. Haskins' head to strike a closed glass door," causing the door to be "thrust open." *Id.* ¶ 10-11.  Hawk took Haskins through the door and into a room, where Haskins fell to the floor. *Id.* ¶ 11.  Officer Hawk "proceeded to strike him and kick him about the head and body" and "ordered Mr. Haskins to take off his clothes." *Id.* ¶ 11.

Another correctional officer who had been present when Carroll threw the the cell phone entered the room and informed Officer Hawk that Carroll, not Haskins, had thrown the phone. *Id.* ¶ 12.  "When Mr. Haskins attempted to explain what happened Officer Hawk struck him in the mouth and pushed Mr. Haskins['] head into a steel grate that was in the room." *Id.* ¶ 13.  Then, "[t]he Officers pinned [Mr. Haskins] to the grate and ripped off his clothes." *Id.* ¶ 14.  Mr. Haskins fell a second time, at which point Hawk "called him a 'nigger' and slammed his head into the steel grate." *Id.* (quoting Hawk). Haskins then "blacked out." *Id.* ¶ 15. When he regained consciousness, Mr. Haskins "heard several officers telling him to stand up straight and squat and spread his butt cheeks." *Id.*  He was unable to do so, instead falling with each attempt. *Id.*

Plaintiff claims that, "[a]s a result of the assault and beating," he "has suffered and will continue to suffer manifold injuries including neurological problems, orthopaedic problems and

emotional distress." *Id.* ¶ 16.

### B.  State Administrative and Judicial Proceedings[7]

Maryland makes available to state prisoners an administrative process for the redress of a prisoner's "grievance against an official or employee of the Division of Corrections."  Md. Code (2008 Repl. Vol., 2012 Supp.), § 10-206 of the Correctional Services Article ("C.S.").  Under this process, an inmate must first file his grievance pursuant to any administrative remedy procedure ("ARP") that is maintained by the institution in which he is confined.  *See* C.S. § 10-206(b); *see also* Code of Maryland Regulations ("COMAR") 12.07.01.02.D.  Within thirty days after the completion of the ARP process, the inmate may request further review by submitting a complaint to the statewide Inmate Grievance Office ("IGO").  *See* COMAR 12.07.01.05.B; *see also* C.S. § 10 206.  Complaints are reviewed preliminarily by the IGO.  *See* C.S. § 10-207; COMAR 12.07.01.06.  If the IGO determines that the complaint is not "wholly lacking in merit on its face," C.S. § 10-208(c), it refers the matter to the Maryland Office of Administrative Hearings ("OAH"), for a hearing to be conducted by an administrative law judge ("ALJ").  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.

A decision of an ALJ that dismisses an inmate's grievance in its entirety is considered a final agency determination.  *See* C.S. § 10-209(b)(1).  On the other hand, an ALJ's decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of the Department of Public Safety and Correctional Services ("DPSCS"), who is entitled to adopt or reject the ALJ's recommendation, in whole or in part.

---

[7] The facts set forth in this section are drawn from exhibits submitted by the parties. There is no dispute as to the authenticity of the documentary evidence.

*See* C.S. § 10-209(b)(2), (c).[8]

In any event, a prisoner is "entitled" to judicial review of the final agency determination in a Maryland circuit court.  C.S. § 10-210(b)(1).  The review is not a de novo proceeding, however.  Instead, it is based on the administrative record.  *See* C.S. § 10-210(b)(3).  A party (the inmate or DPSCS) "aggrieved" by the circuit court's decision may apply to the Maryland Court of Special Appeals for leave to appeal.  C.S. § 10-210(c)(2).  Following a decision of the Court of Special Appeals, a party may petition the Maryland Court of Appeals for a writ of certiorari.  *See* Md. Code (2006 Repl. Vol., 2012 Supp.), §§ 12-201 & 12-202(3) of the Courts & Judicial Proceedings Article ("C.J.");  *see also Stachowski v. State*, 416 Md. 276, 6 A.3d 907 (2010) (discussing scope of limitations on certiorari jurisdiction in cases subject to C.J. § 12-202, where review by the Court of Special Appeals is conditioned on leave to appeal).

On June 23, 2009, over ten months after the alleged assault by Officer Hawk, Mr. Haskins filed a request for an ARP with the Warden of WCI concerning the alleged assault by Officer Hawk.  *See* Ex. F to Motion ("ARP") (ECF 20-7) (Haskins' ARP request).  Haskins asserted that, as a result of the incident on August 9, 2008, he was seriously injured by Officer Hawk's use of "excessive," "sadistic," and "deadly" force.  *Id.*  He also complained that "false promises" were made to him by "investigative D.O.C. personnel," and that criminal charges were never pursued against Officer Hawk concerning the incident.  On August 6, 2009, the Warden referred the matter to the DOC's Internal Investigative Unit and dismissed the ARP.  *See* ARP at 1.  Mr. Haskins filed an appeal of the dismissal of the ARP to the Commissioner of

---

[8] DPSCS is the cabinet-level agency in the State of Maryland that is responsible for management of all state prisons and pre-release centers.  DOC is the division of DPSCS that is specifically responsible for operation of the state prison system.

Correction.  The appeal was dismissed on August 24, 2009, because the matter was under investigation by the Internal Investigation Unit.  *See* Ex. G to Motion (ECF 20-8) (determination of Commissioner).

On October 6, 2009, Mr. Haskins filed a grievance with the IGO concerning the alleged assault.  *See* Ex. H to Motion (ECF 20-9) (Haskins' IGO grievance).  He renewed his claim of "excessive force and assault & battery" by Hawk.  *Id.*  The IGO referred the grievance to OAH for a hearing to be conducted by an administrative law judge.

The ALJ held a hearing on March 24, 2010, concerning the grievance.  At the hearing, Mr. Haskins was represented by the same attorney who represents him in this case.  The ALJ received copious documentary evidence, including medical records of Mr. Haskins' treatment, prepared after the incident and maintained by medical providers under contract to the DOC.[9] The ALJ also heard the testimony of Mr. Haskins, as well as argument of plaintiff's counsel and a representative of DOC.  *See* Ex.D to Motion (ECF 20-5) (transcript of ALJ hearing).

On June 21, 2010, the ALJ issued a written Decision and Order, *see* Ex. E to Motion (ECF 20-6), in which he found that plaintiff "failed to prove by a preponderance of the evidence that he was physically assaulted and injured by WCI staff on August 9, 2008."  *Id.* at 12.  The ALJ based his decision primarily on what the ALJ perceived as inconsistencies between Mr. Haskins' account of the event and the medical records that were received in evidence.[10]  The ALJ also observed that Mr. Haskins did not present any witnesses other than himself to

---

[9] The parties have not submitted the documentary evidence presented to the ALJ .

[10] Notably, although it appears that the parties engaged in some exchange of documents before the hearing, prehearing discovery is not permitted in an inmate grievance proceeding.  *See* COMAR 12.07.01.07.B.

corroborate his version of events, such as his cell mate, Officer Hawk, the other correctional officers, or medical providers or other expert witnesses.  *See id.* at 11.  Accordingly, the ALJ dismissed plaintiff's grievance.  As noted, because the ALJ dismissed plaintiff's grievance in its entirety, the ALJ's decision constituted a final agency decision.  *See* C.S. § 10-209(b)(1)(ii).

Plaintiff filed a timely petition for judicial review in the Circuit Court for Anne Arundel County, Maryland.  The matter was briefed by plaintiff and DPSCS, and the circuit court heard oral argument at a hearing on April 4, 2011.  *See* Ex. J to Motion (ECF 20-11) (hearing sheet); Ex. K to Motion (ECF 20-12) (circuit court docket); Ex.F to Opposition (ECF 23-6) (partial transcript of circuit court hearing).  Following argument, the circuit court rendered an oral ruling in which it determined that the ALJ's ruling was supported by substantial evidence.  On that basis, it affirmed the final decision of the agency.  *See id.*

Plaintiff did not apply to the Maryland Court of Special Appeals for leave to appeal the circuit court's decision.  Instead, he filed the instant suit.

Additional facts are included in the Discussion.

## Discussion

Defendant asserts three threshold affirmative defenses to liability, and also challenges some (but not all) of plaintiff's claims on the merits.  In particular, defendant asserts that plaintiff's claims are barred by the affirmative defenses of (1) res judicata; (2) collateral estoppel; and (3) failure to exhaust administrative remedies before filing suit, as is required of prisoners under 42 U.S.C. § 1997e(a), a provision of the Prison Litigation Reform Act of 1996 ("PLRA").  On the merits, defendant argues that plaintiff's complaint fails to state a claim upon which relief can be granted with respect to violations of the Fourth, Fifth, and Fourteenth

Amendments and Article 24 of the Maryland Declaration of Rights.  However, defendant does not assert a challenge to plaintiff's pleading of a claim under the Eighth Amendment.[11]

### A.  Standards of Review

Defendant's Motion is styled as a Rule 12(b)(6) motion to dismiss or, alternatively, as a motion for summary judgment under Rule 56.  A motion presented in this manner "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012).  Ordinarily, on a motion to dismiss under Rule 12(b)(6), a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein," *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), except for documents that are "integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  But, Rule 12(d) permits a court to consider "matters outside the pleadings" in connection with a Rule 12(b)(6) motion, if the court "treat[s] [the motion] as one for summary judgment under Rule 56." *Id.*

A "Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997).  However, a court may not convert a motion to dismiss to one for summary judgment unless it gives notice to the parties that it will do so. *Laughlin v. Metro. Wash.*

---

[11] Defendant also challenges the viability of plaintiff's official capacity claims against Officer Hawk but, as noted, plaintiff concedes that the official capacity claims are not viable.

*Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)).   When, as here, the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Rule 12(d) vests a district judge with "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion [to one for summary judgment], or to reject it or simply not consider it."   5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2012 Supp.).   This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149.   In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.   And, under Rule 12(d), "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

Here, as noted, defendant asserts that plaintiff's claims are barred by res judicata, collateral estoppel, and failure to exhaust administrative remedies under the PLRA, all of which are affirmative defenses. *See* Fed. R. Civ. P. 8(c)(1) (providing that res judicata and estoppel are affirmative defenses); *Jones v. Bock*, 549 U.S. 199, 216 (2007) ("[F]ailure to exhaust is an affirmative defense under the PLRA . . . ."); *see also Ga. Pac. Consumer Prods., LP v. von*

*Drehle Corp.*, ___ F.3d ___, 2013 WL 979619 (4th Cir. Mar. 14, 2013) ("'Res judicata and collateral estoppel are affirmative defenses . . . .'") (citation omitted).  An affirmative defense is the "'defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's . . . claim, *even if all allegations in the complaint are true*.'"  *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 271 (4th Cir. 2003) (emphasis added) (internal citations and some internal quotation marks omitted).  The defendant, rather than the plaintiff, bears the burden of pleading and proof as to an affirmative defense.  *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Ordinarily, it is incumbent on the defendant to plead and prove [an affirmative] defense.");  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Jones*, *supra*, 549 U.S. 199);  *McNeill v. Polk*, 476 F.3d 206, 220 n.3 (4th Cir.), *cert. denied*, 552 U.S. 1043 (2007).

A "motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  But, an affirmative defense can be resolved by way of a Rule 12(b)(6) motion "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.*  "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*); *see also Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005) ("While it seems unlikely that the failure to exhaust administrative

remedies will often be apparent from the face of a complaint, it is certainly possible that a complaint may clearly show that an inmate has not exhausted his administrative remedies.").

Defendant does not suggest that any of his affirmative defenses are established by the allegations of the Complaint.  To the contrary, Officer Hawk relies on exhibits to his Motion, consisting of documentation from plaintiff's administrative grievance proceeding and subsequent petition for judicial review in state circuit court.  Therefore, the affirmative defenses can only be resolved if, pursuant to Rule 12(d), the Motion is treated as a motion for summary judgment.

Plaintiff has not objected to the Court's consideration of the extrinsic documentation submitted by defendant and, indeed, plaintiff has submitted additional extrinsic documentation for the Court's consideration.  Further, plaintiff has not sought the opportunity for discovery, pursuant to Rule 56(d), before responding to defendant's affirmative defenses.  Rather, plaintiff meets the affirmative defenses head-on and argues that defendant is not entitled to them as a matter of law on the basis of the record the parties have presented.  Accordingly, with respect to the affirmative defenses, I will consider the Motion as a motion for summary judgment, under the Rule 56 standard.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The governing law at issue concerns the scope of the legal doctrines of res judicata, collateral estoppel, and exhaustion of administrative remedies under the PLRA.  The material

facts are drawn from the records submitted by the parties.  Neither side has raised a dispute of material fact as to those records.  To be sure, the parties dispute the underlying facts concerning Officer Hawk's alleged assault of Mr. Haskins.  But, that dispute is not material to the issue of defendant's entitlement to his asserted affirmative defenses.  The question is whether, on the basis of the documents presented, the defendant is "entitled to judgment as a matter of law" as to any of the affirmative defenses he asserts.  Fed. R. Civ. P. 56(a).

In contrast to defendant's contentions as to the affirmative defenses, his arguments on the merits are wholly addressed to the adequacy of plaintiff's pleading as a matter of law, and do not rely on any material extrinsic to the Complaint.  Accordingly, defendant's arguments on the merits will be considered under a Rule 12(b)(6) standard, without conversion to summary judgment.

A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Thus, a Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted).

"A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the

legal remedy he seeks.  *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011),

*cert. denied*, 132 S. Ct. 1960 (2012).  Dismissal "is inappropriate unless, accepting as true the

well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the

plaintiff is unable to 'state a claim to relief.'"  *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th

Cir. 2011) (citation omitted).  Put another way, "'[d]ismissal under Rule 12(b)(6) is appropriate

only where the complaint lacks a cognizable legal theory or sufficient facts to support a

cognizable legal theory.'"  *Hartmann v. Calif. Dept. of Corr. & Rehabilitation*, 707 F.3d 1114,

1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v.*

*Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When

reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges

facts supporting all the elements necessary to establish an entitlement to relief under the legal

theory proposed.'  Dismissal is appropriate if the law simply affords no relief.") (internal citation

omitted).

### B.  Exhaustion of Administrative Remedies

The PLRA's exhaustion requirement states: "No action shall be brought with respect to

prison conditions under [42 U.S.C.] section 1983 . . . , or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted."   42 U.S.C. § 1997e(a).  For purposes of the PLRA, "the term

'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted

of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and

conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).

A suit "brought with respect to prison conditions," *id.* § 1997e(a), includes claims of use of

excessive force.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Invoking the requirement of § 1997e(a), defendant contends that plaintiff's claims have not been fully exhausted through the available administrative remedies.

As discussed, *supra*, DPSCS has made an administrative remedy procedure "available" to Maryland state prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction."  C.S. § 10-206(a); *see generally* C.S. §§ 10-201 *et seq.*  Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement."  COMAR 12.07.01.01.B(8).  Maryland state appellate case law indicates that the administrative grievance procedure applies to a wide variety of matters that "relate to or involve a prisoner's 'conditions of confinement,'" *Massey v. Galley*, 392 Md. 634, 651, 898 A.2d 951, 960 (2006) (citation omitted), including, as in this case, an inmate's claim that he was unlawfully assaulted by a prison officer.  *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).[12]

---

[12] To be sure, the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC [Division of Correction] inmate.'"  *Massey*, 392 Md. at 646, 898 A.2d at 958 (citation omitted).  For example, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.* at 646, 898 A.2d at 958, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Adamson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).  Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy.  *See Dixon v. DPSCS*,

- 14 -

Accordingly, the PLRA required plaintiff to exhaust the administrative remedy provided by the State of Maryland before initiating suit on his federal claims in federal court. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, *supra*, 549 U.S. at 211.  As I recounted, plaintiff filed an ARP request with his warden and subsequently prosecuted his grievance through the IGO, through and including a hearing on the merits conducted by an administrative law judge.  The ALJ dismissed plaintiff's grievance, which constituted a final agency decision.  *See* C.S. § 10-209(b)(1)(ii). Further, plaintiff sought judicial review of the ALJ's decision in state circuit court.

Defendant's contention that plaintiff failed to exhaust his administrative remedies is founded on the fact that plaintiff did not seek leave to appeal the circuit court's decision to the Maryland Court of Special Appeals.  Defendant's position is unsound.

Under the plain text of the PLRA, a prisoner need only exhaust "such *administrative remedies as are available*" before filing suit in federal court.  42 U.S.C. § 1997e(a) (emphasis added).  Review by a state appellate court, or even by a *nisi prius* state court (which plaintiff in this case actually obtained), is not an administrative remedy—it is a *judicial* remedy.   If Congress had intended, in enacting the PLRA, to require prisoners to exhaust both administrative and judicial remedies under state law before suing in federal court, it surely would have said so. When Congress does intend to require exhaustion of state judicial remedies before resort to the federal courts, it knows how to make its intention explicit.  In 28 U.S.C. § 2254, which governs federal habeas corpus relief for a "person in custody pursuant to the judgment of a State court," Congress barred federal habeas actions by such prisoners unless and until "the applicant has

---

175 Md. App. 384, 927 A.2d 445 (2007).  However, case law makes clear, and plaintiff does not dispute, that the administrative grievance procedure applied to his claim.

exhausted the remedies available *in the courts of the State*."   42 U.S.C. § 2254(b)(1)(A) (emphasis added).

Although the Fourth Circuit has not, to my knowledge, ruled expressly on this issue, other federal appellate courts have uniformly rejected the position advanced by defendant.  In *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.), *cert. denied*, 537 U.S. 949 (2002), the Seventh Circuit stated plainly: "Exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."   Other courts have said the same.  *See Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo*), *cert. denied*, 548 U.S. 925 (2006); *Rumbles v. Hill*, 182 F.3d 1064, 1070 (9th Cir. 1999) (concluding that the PLRA's text and legislative history "'indicate that the drafters did not intend to require prisoners to exhaust state tort remedies before filing a federal civil rights claim'") (citation omitted), *cert. denied*, 528 U.S. 1074 (2000), *later overruled on other grounds by Booth v. Churner*, 532 U.S. 731 (2001); *Jenkins v. Morton*, 148 F.3d 257, 259 (3d Cir. 1998) (holding that, under § 1997e(a), a "prisoner must exhaust his 'administrative remedies' as that term is conventionally understood, but need not exhaust state judicial remedies before bringing an action governed by that section").

Defendant cites no cases to the contrary, and I am aware of none.  To be sure, the case law does provide that a prisoner must properly and fully exhaust his administrative remedies by "'using all steps that the *agency* holds out.'"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation omitted) (emphasis added).  But, all of the cases that defendant cites for this proposition speak only of the prisoner's completion of all available levels of the *administrative* remedy, not further echelons of judicial review that a state might make available.  Indeed, in *Woodford*, on which

defendant principally relies, the Supreme Court expressly adopted the Seventh Circuit's decision in *Pozo*, which held that complete administrative exhaustion was required, but rejected the additional requirement of state judicial exhaustion that defendant seeks to impose.  *See id.*

In sum, the record makes clear that plaintiff fully exhausted his administrative remedies up to a final agency decision, as required by the PLRA.  Therefore, defendant's invocation of the affirmative defense of failure to exhaust is without merit.

## C.  Preclusion

The other two affirmative defenses that Officer Hawk asserts, res judicata and collateral estoppel, are both varieties of preclusion.

The Latin phrase "*res judicata*," translated literally into English as "a thing decided," *see* BLACK'S LAW DICTIONARY 1470 (rev. 4th ed. 1968), is the name of a legal doctrine that "bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008).  The doctrine of res judicata is also known as "claim preclusion."  *See, e.g.*, *Ohio Valley Envir. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009).  It was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'"  *Id.* at 161-62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)); *see also Montana v. United States*, 440 U.S. 147, 153-54 (1979) (recognizing that res judicata avoids the "expense and vexation attending multiple lawsuits, conserves judicial resources," and avoids "inconsistent decisions").

Collateral estoppel, also known as "issue preclusion," is a related doctrine.[13]   Under principles of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980).   In other words, collateral estoppel "bars the relitigation of specific issues that were actually determined in a prior action," *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008), so long as the "'party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate'" the issue.   *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).

Defendant argues that, under principles of res judicata or collateral estoppel, the ALJ's determination in the grievance hearing, affirmed by the Circuit Court for Anne Arundel County, precludes plaintiff's suit in this Court.   Preclusion principles carry full force in actions brought in federal court, including suits brought under 42 U.S.C. § 1983.   As the Supreme Court has said, "§ 1983 presents no categorical bar to the application of res judicata and collateral estoppel concepts."   *McCurry*, 449 U.S. at 96-97.   The applicable law for purposes of preclusion in federal court is the law of the tribunal in which the prior judgment was entered.   *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Laurel Sand & Gravel, Inc.*, 519 F.3d at 161.   If the prior litigation occurred in state court, that state's preclusion doctrine governs: "[F]ederal courts asked in a § 1983 action to give res judicata effect (in any of the

---

[13] Indeed, courts sometimes use the term "res judicata" to refer to preclusion principles generally, encompassing both claim preclusion and issue preclusion, *i.e.*, collateral estoppel. *See, e.g.*, *Orca Yachts, LLC v. Mollican, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002).   On other occasions, courts reserve the term "res judicata" for claim preclusion only, and treat collateral estoppel, or issue preclusion, as a separate but related doctrine.   *See, e.g.*, *Sartin v. Macik*, 535 F.3d 284, 287 & n.2 (4th Cir. 2008).   I follow the latter course in this Opinion.

doctrine's aspects) to a state court judgment are bound under the Full Faith and Credit statute, 28

U.S.C. § 1738, to apply the law of the rendering state to determine whether and to what extent

the state court judgment should have preclusive effect in the federal action." *Davenport v. N.C.*

*Dept. of Trans.*, 3 F.3d 89, 92 (4th Cir. 1993).

Moreover, preclusion principles can apply, in some circumstances, to state administrative

determinations as well as state judicial determinations.   The Supreme Court has held, in the

§ 1983 context, that "when a state agency 'acting in a judicial capacity . . . resolves disputed

issues of fact properly before it which the parties have had an adequate opportunity to litigate,'

federal courts must give the agency's factfinding the same preclusive effect to which it would be

entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (holding that

findings of state ALJ as to state employee's allegations of employment discrimination could be

eligible to receive issue preclusive effect in subsequent § 1983 claim).

Accordingly, the relevant law for purposes of analyzing the preclusion doctrines is the

law of the State of Maryland.  This is because the rulings that defendant contends are preclusive

were issued by a Maryland state administrative tribunal and a Maryland circuit court.   In

considering the defenses of res judicata and collateral estoppel, I will apply Maryland law.

### 1. *Res Judicata*

Under Maryland law, application of res judicata requires satisfaction of three conditions:

"(1) the parties in the present litigation are the same or in privity with the parties
to the earlier litigation; (2) the claim presented in the current action is identical to
that determined or that which could have been raised and determined in the prior
litigation; and (3) there was a final judgment on the merits in the prior litigation."

*Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999, 1002 (2012); *accord*

*Powell v. Breslin*, 430 Md. 52, 63-64, 59 A.3d 531, 538 (2013).

- 19 -

Res judicata is inapplicable here because, even assuming that the second and third conditions are satisfied, Officer Hawk's claim founders on the first condition: the parties to this case are not "the same or in privity with the parties to the earlier litigation." *Cochran*, 426 Md. at 140, 43 A.3d at 1002. The grievance proceeding was not a claim against Officer Hawk personally. As a grievance, it was construed as a challenge to the conditions of Mr. Haskins' confinement, predicated on Hawk's conduct, and was thus a claim against the DOC. Indeed, when the grievance was heard by the ALJ, the DOC did not require Officer Hawk to appear, either in person or through counsel. Rather, plaintiff was opposed by a representative of the DOC. Similarly, when plaintiff sought judicial review of the ALJ's decision in state circuit court, he was not opposed by counsel for Officer Hawk; he was opposed by counsel for DPSCS, the DOC's parent agency. In this case, however, neither the DOC nor the DPSCS is a party. Rather, in its present posture, Mr. Haskins' suit is directed only at Officer Hawk in his individual capacity.

The question, then, is whether Officer Hawk was "in privity" with the DOC or DPSCS for purposes of res judicata. *Id.* In some circumstances, Maryland appellate courts have held that an employee and his or her employer are in privity for preclusion purposes. *See, e.g.*, *deLeon v. Slear*, 328 Md. 569, 587-88, 616 A.2d 380, 388-89 (1992) (holding that, in doctor's defamation suit against nurses for submitting complaints about his performance to hospital administrators, which ultimately resulted in his loss of hospital credentials, nurses were in privity with hospital such that doctor's prior defamation suit against hospital barred suit against nurses by res judicata); *Patel v. HealthPlus, Inc.*, 112 Md. App. 251, 684 A.2d 904 (1996) (holding, in reliance on *deLeon*, that employee in HMO's billing department was in privity with HMO, such

that doctor's negligence suit against the employee regarding mishandling of doctor's claims for payments for services was barred under res judicata by doctor's earlier suit against the HMO regarding the same payment claims).

However, the Fourth Circuit has cautioned that "privity is an elusive concept." *Martin v. Am. Bancorp. Retirement Plan*, 407 F.3d 643, 651 (4th Cir. 2005). Indeed, "privity" is "'merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata.'" *Id.* (quoting *Nash v. County Bd. of Educ. v. Biltmore Co.*, 640 F.3d 484, 494 (4th Cir. 1981)). The Fourth Circuit has echoed WRIGHT & MILLER's recommendation "that the privity label either be discarded entirely or 'retained as no more than a convenient means of expressing conclusions that are supported by independent analysis.'" *Martin*, 407 F.3d at 651 n.16 (quoting 18A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 4448, at 327 (2d ed. 2002)).

And, Maryland courts do not take the view that an employer and its employee are always in privity. Rather, the analysis is more nuanced, as *Warner v. German*, 100 Md. App. 512, 642 A.2d 239 (1994), demonstrates. In that case, an Ocean City police officer was involved in a motor vehicle accident with another motorist while operating his police vehicle. *See id.* at 515, 642 A.2d at 241. Ocean City sued the other motorist for the property damage to the police vehicle, but judgment was granted in favor of the other motorist based on the trial court's ruling that the police officer was contributorily negligent. *See id.* at 515-16, 642 A.2d at 241. Subsequently, the officer filed a second suit against the motorist to recover for personal injuries sustained in the accident. The trial court granted summary judgment in favor of the motorist, on

the basis of res judicata.  *Id.*  On appeal, the Maryland Court of Special Appeals reversed, holding that the officer and Ocean City were not in privity, and so res judicata did not apply.

The *Warner* Court distinguished *deLeon*, stating that, although that case seemed to "indicate[ ] that an employment relationship alone can suffice to establish privity for purposes of res judicata . . . [o]ther Maryland caselaw . . . indicates that there are other, more involved, aspects to the concept of privity."  *Id.* at 518-19, 642 A.2d at 242.  It explained that the scope of privity

> "includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies . . . . So, where persons, although not formal parties of record, have a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties."

*Id.* at 519, 642 A.2d at 242-43 (quoting *Ugast v. LaFontaine*, 189 Md. 227, 232-33, 55 A.2d 705 (1942) (citations omitted in *Warner*)).

Accordingly, the *Warner* Court explained that, "[a]lthough Sgt. Warner, as a plaintiff in *German II*, was a witness in *German I*, he did not have the same degree of control" in that suit as the plaintiff, Ocean City, did, or as the doctor in *deLeon*.  *Warner*, 100 Md. App. at 522, 642 A.2d at 244.  The police officer was not "permitted to take depositions, file pleadings or documents with the court, or appeal from any court's decision."  *Id.*  Moreover, the Court observed the "divergence of interests between Ocean City," which had sued only for about $3,000 in property damage to the police vehicle, and the officer, who sought personal injury damages orders of magnitude greater.  *Id.*  Thus, the court held that the employment relationship was insufficient to establish privity.

The Fourth Circuit has expressed similar principles under federal law.  It has said: "To be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'"  *Martin*, *supra*, 407 F.3d at 651 (citation omitted).   The Court has recognized three general "categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication": first, a "non-party who controls the original action"; second, a "successor-in-interest to a prior party"; and third, a "non-party whose interests were adequately represented by a party to the original action," a narrow concept that the Fourth Circuit has also termed "virtual representation." *Id.* (citing *Klugh v. United States*, 818 F.2d 294 (4th Cir. 1987)).

Of import here, the Fourth Circuit has squarely concluded that, in a § 1983 suit, a "government employee in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata." *Andrews v. Daw*, 201 F.3d 521, 523 (4th Cir. 2000). Notably, it is well settled that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). In *Andrews*, the plaintiff's claims arose out of a traffic stop.  He first sued the State of North Carolina and the North Carolina highway patrolman who pulled him over, only in the patrolman's official capacity.  *Andrews*, 201 F.3d at 523-24.  That suit was dismissed on the basis of Eleventh Amendment sovereign immunity.  *Id.*  Thereafter, the plaintiff brought a second suit, solely against the patrolman in his individual capacity.  *Id.* at 524.

The district court dismissed the second suit on the basis of res judicata, but the Fourth Circuit reversed. *Id.* The Fourth Circuit endorsed § 36(2) of the RESTATEMENT (SECOND) OF JUDGMENTS, which provides that a "'party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.'" *Andrews*, 201 F.3d at 525 (quoting RESTATEMENT). In reasoning that is persuasive here, the *Andrews* Court said:

> While "[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and in essence are "suit[s] against the entity." Because the real party in interest in an official-capacity suit is the entity, a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets. Furthermore, different legal theories of liability are required for the plaintiff, and different defenses are available to the defendant, in a personal-capacity action than in an official-capacity action. These differences indicate that a government official in his official capacity does not represent "precisely the same legal right" as he does in his individual capacity.

*Andrews*, 201 F.3d at 525 (citations and some internal quotation marks omitted).

The Fourth Circuit reiterated *Andrews*'s holding in *Brooks v. Arthur*, 626 F.3d 194 (4th Cir. 2010), again rejecting a "transitive theory of capacities," *id.* at 200, in a suit that is even more closely on point. In *Brooks*, the Fourth Circuit reversed the district court's dismissal, on res judicata grounds, of § 1983 retaliation claims against the plaintiff's supervisors in their individual capacities, after the plaintiff's Virginia state governmental employer had prevailed in a prior state administrative grievance proceeding in which the plaintiff had pressed his claim of retaliation. The *Brooks* Court held that *Andrews* controlled, even though there was "no material distinction between the theories of liability" in the court case and the administrative proceeding. *Id.* at 203. The *Brooks* Court emphasized "the differences in the legal landscape when a

defendant is sued in his individual—as opposed to his personal—capacity," *id.* at 203, stemming

from the "legal fiction about individuals having two separate identities: one identity (or capacity)

as an official representative of either the government or a corporation; and a separate identity (or

capacity) as an individually autonomous human being." *Id.* at 201.

On the basis of the principles articulated in *Warner*, it appears that Maryland courts

would come to the same conclusion here as the Fourth Circuit did in *Brooks* (applying Virginia

law), and *Andrews* (applying federal law).  Accordingly, I conclude that Officer Hawk, in his

individual capacity, is not in privity with DPSCS or the DOC.  It follows that Officer Hawk is

not entitled to claim preclusion based on the prior state administrative grievance proceeding or

the state circuit court decision.  Therefore, his affirmative defense of res judicata fails.

## 2.  Collateral Estoppel

Collateral estoppel presents a much closer issue in this case than does res judicata.  Under

Maryland law, collateral estoppel, or issue preclusion, is a "'common law doctrine'" by which,

"'[w]hen an issue of fact or law is actually litigated and determined by a valid and final

judgment, and the determination is essential to the judgment, the determination is conclusive in a

subsequent action between the parties, whether on the same or a different claim.'"  *Cosby v.

Dept. of Human Res.*, 425 Md. 629, 639, 42 A.3d 596, 602 (2012).  Collateral estoppel  requires

satisfaction of four conditions:

> "1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
>
> 2. Was there a final judgment on the merits?
>
> 3. Was the party against whom [collateral estoppel] is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom [collateral estoppel] is asserted given a fair opportunity to be heard on the issue?"

*Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 361 Md. 371, 391, 761 A.2d 899, 909 (2000) (citation omitted).

Notably, "traditional collateral estoppel, or issue preclusion, requires mutuality of parties," *Burruss v. Bd. of County Comm'rs of Frederick County*, 427 Md. 231, 250, 46 A.3d 1182, 1193 (2012), just as res judicata requires that the same parties or their privies were involved in both suits at issue.   However, Maryland courts have sometimes recognized the concept of "nonmutual" collateral estoppel, where "one of the parties in the present suit was neither a party nor in privity with a party to the prior action."   *Culver v. Md. Ins. Comm'r*, 175 Md. App. 645, 653, 931 A.2d 537, 542 (2007).   The Maryland Court of Appeals explained in *Welsh v. Gerber Products, Inc.*, 315 Md. 510, 517 n.6, 555 A.2d 486, 489 n.6 (1989):

> Offensive use of nonmutual collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against a different party.   Defensive use of nonmutual collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different party.

"The [Maryland] Court of Appeals has recognized defensive nonmutual collateral estoppel but has 'yet to formally embrace offensive nonmutual collateral estoppel.'" *Culver*, 175 Md. App. at 654, 931 A.2d at 542 (quoting *Rourke v. Amchem Prods., Inc.*, 384 Md. 329, 349, 863 A.2d 926 (2004)).   In this case, Officer Hawk invokes defensive nonmutual collateral estoppel.[14]

---

[14] Accordingly, I need not address the additional considerations that are implicated by offensive nonmutual collateral estoppel.

As I will explore in more depth, the Maryland Court of Appeals has said that it "is unclear under Maryland law to what extent principles of res judicata and collateral estoppel apply to administrative decisions." *Sugarloaf Citizens Ass'n v. Northeast Md. Waste Disposal Auth.*, 323 Md. 641, 658 n.13, 594 A.2d 1115, 1123 n.13 (1991). However, the Maryland courts have articulated three minimum attributes that an administrative adjudication must possess in order to have the potential to be given collateral estoppel effect: (1) that "the agency was acting in a quasi-judicial capacity"; (2) that the issue as to which the defendant seeks to estop the plaintiff "was actually litigated before the agency"; and (3) that "resolution of the issue was necessary to the agency's decision." *Neifert v. Dept. of the Envir.*, 395 Md. 486, 507, 910 A.2d 1100, 1112 (2006); *accord Batson v. Shiflett*, 325 Md. 684, 701-05, 601 A.2d 1191, 1200-02 (1992). The second and third attributes articulated by the *Neifert* Court are ordinarily required in order to apply collateral estoppel to a prior court judgment. *See Batson*, 325 Md. at 703, 602 A.2d at 1201. Thus, the primary additional requirement for application of collateral estoppel to an administrative agency's decision is the first attribute identified in *Neifert*: that the agency was acting "in a quasi-judicial capacity" when making the determination at issue. *Neifert*, 395 Md. at 507, 910 A.2d at 1112.

Defendant asks the Court to give collateral estoppel effect to the ALJ's factual finding, affirmed by the circuit court, that Officer Hawk did not assault Mr. Haskins. Officer Hawk relies principally on *Batts v. Lee*, 949 F. Supp. 1229 (D. Md. 1996).

In *Batts*, the plaintiff was an inmate in a Maryland state prison. *Id.* at 1231. Batts alleged that Lee, a correctional officer, had ordered him to dismiss an ARP request that he had filed against another correctional officer. *Id.* Batts claimed that, when he did not respond to Officer

Lee's demand, Officer Lee retaliated by confining him in "full restraints" in an "isolation unit" for over 24 hours.  *Id.*  Batts filed a grievance complaint with the IGO, which referred the matter to OAH for a hearing.  *Id.*  An administrative law judge conducted the hearing, at which Batts was represented by a fellow inmate; Batts testified on his own behalf and also called Officer Lee as an adverse witness.  *Id.*; *see also id.* at 1233.  The ALJ dismissed the grievance, concluding that there was "'no credible evidence to substantiate'" Batts' claims of retaliation, and that Batts' confinement in the isolation unit had complied with DOC regulations.  *Id.* at 1231 (quoting ALJ's decision).  Batts, *pro se*, filed a petition for judicial review of the final agency determination.  *Id.*  The Circuit Court for Baltimore City affirmed the ALJ's decision in open court.  *Id.*  Thereafter, Batts filed suit against Officer Lee in federal court under § 1983.  Officer Lee asserted collateral estoppel as a defense.  *Id.*

The court held that Batts' federal suit was barred by the collateral estoppel effect of the ALJ's decision.  It reasoned that, under Maryland law, preclusion principles ordinarily apply to a judgment of a court that affirms or reverses administrative determinations, *see id.* at 1234, and that Batts had received a "full and fair opportunity to pursue his claim in the state administrative and judicial systems."  *Id.* at 1233.  The court relied upon the procedural rights of prisoners in IGO grievance proceedings, *see id.*, which (then as now) provide the inmate with a right to reasonable notice of the hearing, *see* COMAR 12.07.01.07.A; the right to appear at the hearing and represent himself or be represented by an attorney (at his own cost) or another inmate, *see* COMAR 12.07.01.07.C(1); and the right to present witness testimony and documentary

evidence.  *See* COMAR 12.07.01.07.C(2)-(3).[15]  The *Batts* Court also noted that an inmate was entitled to the creation of a record of the hearing and to a written decision of the ALJ, setting forth findings of fact and conclusions of law, which he could appeal on the record to a state circuit court.  *See Batts*, 949 F. Supp. at 1233.  And, it observed that "Batts exercised most of these rights."  *Id.*  Moreover, "[t]o the extent that Batts was denied any procedural rights, as he appear[ed] to allege, he had a remedy—challenge the ALJ's decision on these grounds" in state circuit court— although there was "no indication before the Court that he did."  *Id.* at 1234.

In sum, the *Batts* Court concluded that the state proceedings satisfied all of the conditions for application of collateral estoppel.  First, "[w]hether Lee retaliated against Batts, and whether DOC regulations were violated, were issues essential to the ALJ's resolution of the case as well as the Circuit Court's subsequent review of the ALJ's decision."  *Id.* at 1235.  And, the ALJ's factual findings on those issues were "fatal to any First or Eighth Amendment claims Batts . . . made to this Court."  *Id.* at 1234.  Second, the "decision of the Circuit Court was final, valid and on the merits."  *Id.*  Third, "Batts was a party to the state litigation."  *Id.*  And fourth, "Batts was provided a full and fair opportunity to pursue his claim."  *Id.* at 1233.  Therefore, the *Batts* Court granted judgment in favor of Officer Lee.

The decision in *Batts* is well reasoned and entitled to respect.  However, as plaintiff points out, there is some question as to its continued vitality.  For one thing, *Batts* essentially

-------

[15] The *Batts* Court stated that Batts "was entitled to take discovery and subpoena witnesses."  *Batts*, 949 F. Supp. at 1233 (citing OAH regulations).  Although OAH regulations continue to provide for an opportunity for discovery in proceedings conducted by ALJs generally, *see* COMAR 28.02.01.13, the current regulations applicable to the inmate grievance process provide that "[p]rehearing discovery procedures do not apply to inmate grievance proceedings."  COMAR 12.07.01.07.B.

predated the PLRA, which was enacted as Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Thus, the PLRA was enacted while Batts's case was pending, and a few months before the decision in *Batts* was issued. Critically, because Batts "brought" his case before the PLRA was enacted, 42 U.S.C. § 1997e(a), the PLRA's administrative exhaustion requirement did not apply to him. *See, e.g.*, *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998) ("Exhaustion applies only to cases filed on or after April 26, 1996, the effective date of the Prison Litigation Reform Act."), *abrogated on other grounds by Jones*, *supra*, 549 U.S. 199. Indeed, the *Batts* Court neither mentioned the PLRA nor considered the effect of its exhaustion requirement.

In the wake of the PLRA, utilization of a prison administrative remedy is no longer optional. Every prisoner is now required to exhaust available administrative remedies as a condition precedent to filing suit in federal court. If the decision of an ALJ in the state administrative grievance process is entitled to issue-preclusive effect, then a prisoner would be collaterally estopped from proceeding in federal court in almost any case in which the administrative grievance process addresses the merits of the prisoner's complaint. This would place most prisoner plaintiffs in a veritable "Catch-22."

In *Elliott*, *supra*, 478 U.S. at 794-95, the Supreme Court stated that application of collateral estoppel principles to state administrative determinations, as opposed to state court judgments, is a matter of judicially fashioned federal common law. Although the *Elliott* Court found no reason not to give collateral estoppel effect to administrative agency decisions generally in the context of subsequent suits under § 1983, it reached the opposite conclusion with respect to subsequent suits under Title VII of the Civil Rights Act of 1964. *See id.* at 795-96.

This was because the Congressionally dictated role for state administrative determinations as a condition precedent (and not a bar) to subsequent federal suits indicated "that Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." *Id.* at 796.   Because the PLRA mandates the exhaustion of state administrative proceedings as a condition precedent to suit, a court could conclude that Congress did not intend for those same administrative proceedings to collaterally estop the prisoner plaintiff from the right to litigate his claim in court.   Defendant has cited no reported federal decision involving a case where the PLRA applied, in which a court held that an agency determination in a prisoner's administrative grievance proceeding was entitled to issue preclusive effect.   Nor has the Court uncovered such a decision.

A handful of cases, including one in this district, *Chase v. Peay*, 286 F. Supp. 2d 523, 530 & n.12 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004), have rejected the argument that exhaustion should not be required because of the potential preclusive effect of an administrative decision.   *See also Majid v. Wilhelm*, 110 F. Supp. 2d 251, 257 (S.D.N.Y. 2000); *Castillo v. Buday*, 85 F. Supp. 2d 309, 313 (S.D.N.Y. 2000).   The actual holdings of these cases—that the PLRA's exhaustion requirement is mandatory—are unquestionably correct.   *See, e.g.*, *Jones*, *supra*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").   But, these cases did not present the question of whether state prison administrative proceedings are entitled to preclusive effect.   *See Chase*, 286 F. Supp. 2d at 530 n.12 ("Because the preclusive effect of IGO proceedings is not at issue here, the court expresses no opinion regarding Chase's suggestion that '[IGO] proceedings are not as full and fair as is an action brought in a federal forum.'").   Moreover, although

Maryland courts are amenable in principle to affording preclusive effect to quasi-judicial state administrative decisions, *see, e.g.*, *Neifert*, *supra*, 395 Md. 486, 910 A.2d 1100, no reported Maryland appellate decision of which I am aware, either before or after *Batts*, has held that a decision of an administrative law judge arising out of the prisoner administrative grievance process is entitled to issue preclusive effect.

To be sure, regardless of whether an administrative determination is entitled to collateral estoppel effect, "it is crystal clear that a final judgment of a circuit court affirming [or reversing] a decision of an administrative agency . . . is entitled to full preclusive effect." *Esslinger v. Baltimore City*, 95 Md. App. 607, 621, 622 A.2d 774, 781 (1993) (citing cases).   Where a prisoner obtains judicial review of the final agency decision in state circuit court, the state court's judgment, like any other, may well preclude relitigation of issues, to the extent that the conditions for application of collateral estoppel are satisfied.   *See Batts*, 949 F. Supp. at 1234 (citing *Esslinger*).   As I see it, however, those conditions are not met here.

As noted, the first criterion for application of the doctrine of collateral estoppel is that the "issue decided in the prior adjudication" must be "identical with the one presented in the action in question." *Colandrea*, *supra*, 361 Md. at 391, 761 A.2d at 909.   Where that identity of issues is present, federal courts in § 1983 actions have given collateral estoppel effect to state judicial decisions rendered in review of prison administrative decisions (although there is relatively scant reported case law on point).   For example, in *Pacheco v. Vanwyk*, 164 F.3d 618, 1998 WL 716572 (2d Cir. Oct. 9. 1998) (unreported) (table), the Second Circuit held that certain issues asserted by an inmate in the federal action were identical to issues he had raised in his earlier state judicial review proceeding, and thus barred by collateral estoppel.   Therefore, the court ruled

that the inmate was "precluded from arguing that he was entitled to present testimony from other witnesses at his prison hearing, because these claims were adjudicated in the [state judicial review] proceeding . . . ." *Id.*, 1998 WL 716572, at *2.

Similarly, in *Stubbs v. de Simone*, No. 04Civ.5755, 2005 WL 2429913 (S.D.N.Y Sept. 30, 2005), the court said: "'Although a § 1983 claim for damages is not barred by a judgment in a[ ] [state judicial review] proceeding, a federal plaintiff nonetheless may still be barred by the doctrine of collateral estoppel or issue preclusion from relitigating issues that were determined in that proceeding.'" *Id.*, 2005 WL 2429913, at *14.  In that case, the prisoner plaintiff sued under § 1983, contending that a prison administrator's "miscalculation of his sentence and conditional release date," *id.* at *5, violated his federal due process rights.  The plaintiff had previously challenged the administrative decision in a petition for judicial review in a New York state court. *See id.* at *5-6.  Rejecting the prisoner's claim on the basis of collateral estoppel, the federal court said, *id.* at *18 (internal citations omitted):

> In determining whether the doctrine of collateral estoppel applies, the Court must first determine if "the issue in question was actually and necessarily decided in a prior proceeding."  Here, the allegations Stubbs has asserted against de Simone in his federal complaint are virtually identical to those Stubbs relied upon in his [state court] petition and which [the state court] found to be without merit.  In his federal complaint, Stubbs has asked this Court to examine de Simone's sentence calculations and to order de Simone to "re-calculate [his] sentence terms in accordance with appropriate state statutes."  Stubbs alleges in his federal complaint that de Simone "failed to make accurate calculations of [his] terms of imprisonment," and that de Simone relied upon "the wrong mathematical method to calculate" his sentence. Stubbs, therefore, alleges that it was de Simone's failure to make accurate calculations of his term of imprisonment that violated his constitutional rights.  Significantly, [the state court] concluded after reviewing Stubbs's Orange County petition that Stubbs's sentence had been correctly calculated and that he was not entitled to any reduction in his sentence.  If this Court were to now find that de Simone improperly calculated Stubbs's sentence and thereby violated Stubbs's constitutional rights, that decision would

be contrary to [the state court's] conclusion that Stubbs's sentence had been properly calculated and thus would violate the collateral estoppel doctrine.

There is no reason to conclude that a federal court considering a Maryland circuit court's judgment entered on review of an agency decision should apply a different analysis. However, because a Maryland circuit court's review of a final agency determination of an inmate's grievance is not *de novo*, the court is not necessarily tasked with deciding the same issues decided by the agency.

Under C.S. § 10-210(b)(3), a circuit court's review is "limited to:"

(i) a review of the record of the proceedings before the [IGO] and the [OAH] and any order issued by the Secretary [of DPSCS] following those proceedings; and

(ii) a determination of whether the complainant's rights under federal or State law were violated.

Encapsulating the familiar standard of judicial review of an agency proceeding, the Maryland Court of Appeals has explained that a reviewing court's "'role is limited to ascertaining *whether there exists substantial evidence in the record as a whole that supports the findings and conclusions of the agency*; we must also determine 'if the administrative decision is premised upon an erroneous conclusion of law.'" *Sec'y of DPSCS v. Demby*, 390 Md. 580, 614, 890 A.2d 310, 330 (2006) (emphasis added). In contrast to the review of factual determinations, when "determining whether a constitutional right has been infringed, [a reviewing court must] make an independent constitutional appraisal." *Watkins v. Sec'y of DPSCS*, 377 Md. 34, 46, 831 A.2d 1079, 1086 (2003).

As the foregoing statement indicates, in judicial review of an agency decision, an agency's factual determinations are reviewed under a "substantial evidence" standard. "In applying the substantial evidence test, a reviewing court decides whether a reasoning mind

reasonably could have reached the factual conclusion the agency reached." *Md. Aviation Admin. v. Noland*, 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005) (internal citations and quotation marks omitted).  Moreover, in undertaking its review, a "reviewing court should defer to the agency's fact-finding and drawing of interences if they are supported by the record." *Id.*; *accord Motor Vehicle Admin. v. Carpenter*, 424 Md. 401, 413, 36 A.3d 439, 446 (2012).  In the context of judicial review of an ALJ's decision rendered through the inmate grievance process, a circuit court does not decide issues of fact.  Instead, as to factual matters, the "issue" that is "decided" by the circuit court is whether the agency's factual determinations were supported by substantial evidence.  *Colandrea*, *supra*, 361 Md. at 391, 761 A.2d at 909.  As plaintiff points out, a comparison of the ALJ's written decision and the circuit court's oral decision affirming it demonstrates that the circuit court applied the substantial evidence standard of review.

After the ALJ heard testimony from Haskins and reviewed his medical records, the ALJ concluded that there was "no doubt that [Haskins] began experiencing serious medical problems on August 14, 2008," less than a week after the incident involving Officer Hawk.  ALJ Decision at 8, Ex. E to Motion (ECF 20-6). The ALJ found that, on August 14, 2008, Mr. Haskins began experiencing "left-side weakness" and was taken to the WCI infirmary, and ultimately to the hospital, where CT scans revealed a "right basal ganglia infarct." *Id.* at 9.  However, the ALJ concluded that Mr. Haskins's medical condition was not caused by the alleged assault by Hawk because his medical records from August 14 noted no recent history of head trauma  and  did not indicate that Haskins had stated to physicians that Hawk had assaulted him.  *See id.* at 9-10. Moreover, the correctional officers' use-of-force reports with respect to the incident did not indicate use of significant force against plaintiff.   Although Haskins was taken to the WCI

infirmary after the cell phone incident, the WCI infirmary records indicated that he had only "minor abrasion[s]" that required "no treatment." *Id.* at 9.  On this basis, the ALJ found that Mr. Haskins' account of the assault lacked credibility, and he concluded that plaintiff "failed to proved by a preponderance of the evidence that he was physically assaulted and injured by WCI staff on August 9, 2008." *Id.* at 12.

On review of this decision, the circuit court did not resolve the same issues of credibility and weighing of the evidence.  Nor did the court make a determination as to whether plaintiff was assaulted.  Rather, the circuit court's determination was limited to whether the evidence was sufficient to withstand the substantial evidence test.  The circuit court said:

> . . . I can count on one hand the time [sic] I've been reversed for any case other than administrative appeal where I have ended up making a decision that is contrary to the well-established notion that if there's any potential likelihood of any reasonable person in the entire western universe deciding this case the way the ALJ did, then Judge . . . , you shouldn't interpose your views on it.
>
> And so frequently I just, kind of, hold my nose and say, yeah, I don't know that I would have come to this conclusion, and maybe I would have.  I don't know.  I didn't hear him.  I didn't see him.  And I certainly understand the limitations and the handicap of representing somebody who is in this captive environment, and I mean it figuratively as well as literally, where he may have gotten assaulted and, of course, the guards say I never did anything.
>
> He may have been mistreated by physicians who are not always known to be the most brilliant medical staff in the world.  But we can't assume that.  And who, you know, didn't impress the ALJ, I guess, with his credibility.  But the bottom line is that I can't say that the record is such, is so devoid of any evidence from which no reasonable person could have come to the conclusion that the ALJ did in this case.
>
> So I cannot say that the ALJ's decision is unsupported by the evidence, and therefor I habe to affirm the ALJ's, or the Office of Administrative Hearing's decision.

Ex. F to Opposition at 3-4 (transcript).

Judicial review of an agency decision is not a one-size-fits-all proposition; a reviewing court applies different standards of review as to different questions.  In applying the substantial evidence standard, as the circuit court in this case faithfully did, the reviewing court was required to ignore any countervailing evidence against the agency decision, so long as there was substantial evidence in support of the ALJ's decision.  Clearly, a finding that an ALJ's decision was supported by substantial evidence is not tantamount to a trial.  As to non-factual issues, the standard of review is not so constrained.  A reviewing court makes de novo decision as to issues of law, and these rulings would ordinarily be entitled to collateral estoppel effect in a subsequent proceeding.  For instance, if the issue that arose in a subsequent § 1983 suit was whether the prisoner was afforded due process protections at the administrative hearing, and the state court had resolved that issue on review of the agency proceeding, the state court's decision on that issue could collaterally estop litigation of the same issue in the § 1983 suit.

In the suit that is now pending, the issue is whether Officer Hawk's alleged use of excessive force deprived Mr. Haskins of his federal rights under color of law.  *See* 42 U.S.C. § 1983.  The state circuit court did not decide the factual issue of whether plaintiff was assaulted. Instead, it only decided whether substantial evidence supported the ALJ's decision that plaintiff was not victimized by excessive force.  As a result, plaintiff did not have his day in *court* on the key factual question of whether he was assaulted by Officer Hawk.

Certainly, the ALJ decided that issue.  But, in order to arrive at the result urged by defendant, the Court would need to give collateral estoppel effect to the ALJ's decision, rather than the decision of the circuit court.  In the context of a § 1983 suit, to give collateral estoppel effect to a decision rendered in the course of the administrative proceedings that the PLRA

requires prisoners to exhaust would eviscerate the § 1983 remedy for prisoners.  Put another way, prisoners who exhaust, as required, would be foreclosed from suit.

Of course, persons who are not incarcerated are not required to exhaust administrative remedies before bringing suit under § 1983.  *See Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982).  Undoubtedly, Congress enacted the administrative exhaustion requirement of the PLRA in order to "'limit litigation brought by prisoners.'"  *McLean v. United States*, 566 F.3d 391, 403 (4th Cir. 2009).  In doing so, Congress intended to "filter out the bad claims and facilitate consideration of the good."  *Jones*, *supra*, 549 U.S. at 203-04.  But, there is no indication that Congress intended to eliminate the remedy of § 1983 for almost all prisoners.  Yet, application of defendant's position would lead to that result.  Under defendant's interpretation, the exhaustion requirement is a whipsaw: the prisoner who eschews the available administrative remedies has his suit dismissed for failing to exhaust, but the prisoner who unsuccessfully avails himself of the administrative remedies would have his suit collaterally estopped.  That cannot be what Congress intended by enacting the PLRA.

Although I am unaware of any Fourth Circuit case directly on point, I note that, even as the Second Circuit has endorsed giving collateral estoppel effect to the determination of issues by state courts in proceedings for judicial review of agency determinations, *see, e.g.*, *Pacheco*, *supra*, 164 F.3d 618, that same court has resisted giving collateral estoppel effect to agency determinations that are merely reviewed under a substantial evidence standard.  In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit declined to collaterally estop a prisoner's § 1983 suit arising out of allegations that his due process rights were denied in a

prison disciplinary proceeding, despite the fact that the prisoner had received judicial review in state court.  The *Colon* Court said, *id.* at 869 (some citations omitted):

> We think there is a substantial question as to whether, under New York law, collateral estoppel should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in a[ ] [judicial review] proceeding, given the "procedural laxity" of such prison hearings, and the limited nature of substantial-evidence review.  *See Stork Restaurant v. Boland*, 282 N.Y. 256, 274, 26 N.E.2d 247, 255 (1940) ("Evidence which is sufficient to require the court to submit a question of fact to a jury is sufficient to support a finding by the administrative [agency].").

In sum, there is not clear support in federal or Maryland case law for the proposition that a factual finding in an inmate grievance proceeding, whether unreviewed or reviewed only on a substantial evidence standard, should be entitled to collateral estoppel effect.  In light of the lack of authority for that proposition, beyond the pre-PLRA decision in *Batts*, and mindful of the potential sweeping effect that adoption of such a proposition could have in light of the PLRA's administrative exhaustion requirement, the Court declines to adopt the defense's position.  Given the current posture of the case, in which defendant as the moving party seeks a ruling at summary judgment that plaintiff is not entitled to proceed, it is defendant's burden to persuade the Court that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When, on a motion for summary judgment, a question of law is at issue, "summary judgment may be awarded if the defendant has demonstrated a clear entitlement to judgment in its favor as a matter of law."  *King v. Government Employees Ins. Co.*, 843 F. Supp. 56, 56 (D. Md. 1994). Defendant has not done so.  Moreover, a district court has discretion "to deny summary judgment motions even when the standard [might] appear[ ] to have been met." *Andrew v. Clark*, 561 F.3d 261, 271 (4th Cir. 2009); *see also Forest Hills Early Learning Ctr., Inc. v. Lukhard*, 728 F.2d 230, 245 (4th Cir. 1984) ("Even where summary judgment is appropriate on

the record so far made in a case, a court may properly decline, for a variety of reasons, to grant it.").   Accordingly, I will deny defendant's Motion with respect to the issue of collateral estoppel.

D.  Merits

On the merits, defendant argues that plaintiff's Complaint fails, as a matter of law, to state a claim upon which relief can be granted under the Fourth, Fifth, and Fourteenth Amendments, or under Article 24 of the Maryland Declaration of Rights.

The Fourth Amendment prohibits, *inter alia*, "unreasonable searches and seizures" by agents of the federal government.   The Fifth Amendment, among other things, prohibits "depriv[ation] of life, liberty, or property, without due process of law" by the federal government.   The Fourteenth Amendment contains a similar guarantee of due process against state governments, and also requires the states to provide "equal protection of the laws."   The Supreme Court has held that the Fourteenth Amendment's guarantee of due process has the effect of incorporating the Fourth Amendment's protections against the states.   *See Wolf v. Colorado*, 338 U.S. 25 (1949).   By so-called "reverse incorporation," the Fifth Amendment's guarantee of due process has also been held to incorporate a guarantee of equal protection by the federal government.  *See Bolling v. Sharpe*, 347 U.S. 497 (1954).

Article 24 of the Maryland Declaration of Rights is Maryland's state constitutional analog to the Due Process Clause of the Fourteenth Amendment.  *See, e.g.*, *Carroll v. State*, 428 Md. 679, 688, 53 A.3d 1159, 1164 (2012).  Moreover, the Maryland Court of Appeals has "'held that the concept of equal protection is embodied within'" Article 24.  *Frey v. Comptroller of Treas.*, 422 Md. 111, 134 n.13, 29 A.3d 475, 488 n.13 (2011) (citation omitted).

In his Complaint, plaintiff invokes the protection against unreasonable searches and seizures under the Fourth and Fourteenth Amendments; his entitlement to due process and equal protection under the Fifth and Fourteenth Amendments and Article 24; as well as his right to be free from "cruel and unusual punishments" under the Eighth Amendment.  Defendant does not challenge plaintiff's pleading of his Eighth Amendment claim.[16]

The touchstone case with respect to claims of use of excessive force brought under 42 U.S.C. § 1983 is *Graham v. Connor*, 490 U.S. 386 (1989).  In that case, the Supreme Court rejected the notion "that all excessive force claims brought under § 1983 are governed by a single generic standard." 490 U.S. at 393.  It said, *id.* at 394:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. . . .   The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard.

"Where . . . the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen," the Court reasoned, "it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Id.*  Moreover, the Court held that such claims of "excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" should be evaluated "under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395.

---

[16] The Eighth Amendment's guarantee against cruel and unusual punishment has been made applicable to the states by the Due Process Clause of the Fourteenth Amendment.  *See Robinson v. California*, 370 U.S. 660 (1962).

In contrast, the Court located a different source of substantive rights for pre-trial detainees and convicted prisoners.  As to pre-trial detainees, the Court said that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at 395 n.10.  And, of import here, the Court said, *id.* (citation omitted):

> After conviction, the Eighth Amendment "serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified."  Any protection that "substantive due process" affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment.

Accordingly, I agree with defendant that plaintiff's Complaint does not allege a violation of the substantive protections of the Fourth, Fifth, or Fourteenth Amendments.  Rather, because plaintiff is a convicted prisoner, his claim of excessive force arises solely under the Eighth Amendment.[17]  *See Whitley v. Albers*, 475 U.S. 312, 319-21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34, 130 S. Ct. 1175, 1176-78 (2010) (per curiam); *Hudson v. McMillan*, 503 U.S. 1, 7-9 (1992).

Under an Eighth Amendment standard, whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 6-7.  A court must consider the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  *See Whitley*, 475 U.S. at 321.  The absence of significant injury alone is

---

[17] The Fourteenth Amendment is relevant to this claim only as the vehicle for application of the Eighth Amendment to state agents.

not dispositive of a claim of excessive force, however.   *Wilkins*, 130 S.Ct. at 1178.   Rather, the extent of injury is one factor indicative of whether the force used was appropriate in a particular situation.   But, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had "the good fortune to escape" serious harm.   *Wilkins*, 130 S.Ct. at 1179. As the Court said in *Wilkins*: "Injury and force . . . are only imperfectly correlative, and it is the latter that ultimately counts."   *Id.* at 1178.

Plaintiff's Complaint states a claim under the Eighth Amendment, and defendant does not argue otherwise.   Plaintiff's other federal constitutional claims will be dismissed.

I will also dismiss plaintiff's state law claim under Article 24.   As a general rule, Maryland courts "interpret Article 24 *in pari materia* with the Fourteenth Amendment to the United States Constitution."   *Tyler v. City of College Park*, 415 Md. 475, 499-500, 3 A.3d 421, 435 (2010).   Although I am unaware of a Maryland appellate decision articulating a legal framework for a prisoner's state constitutional claim of use of excessive force (and neither side has cited such a decision), I see no reason why Maryland courts would depart from their ordinary practice of reading state constitutional provisions *in pari materia* with their federal analogs. Such an analysis would suggest that, consistent with *Graham*, a prisoner's claim of use of excessive force should be considered under a state constitutional ban of cruel and unusual punishment, analogous to the Eighth Amendment.   *Cf. Smith v. Bortner*, 193 Md. App. 534, 543-49, 998 A.2d 369, 374-78 (2010) (applying analysis from *Graham* to determine source of a Maryland state constitutional claim of excessive force against a pre-trial detainee).

Article 24 does not mention cruel and unusual punishment, but two other provisions of the Maryland Declaration of Rights expressly prohibit cruel and unusual punishment: Article 16

and Article 25.  In my view, plaintiff's state constitutional claim is more appropriately brought

under Article 16 and Article 25.  Accordingly, Count II will be dismissed, without prejudice to

plaintiff's rights to file an amended complaint renewing the claim under Article 16 and/or Article

25 of the Maryland Declaration of Rights.

     An Order implementing my rulings follows.

Date:   March 29, 2013                  _____/s/_____

                                        Ellen Lipton Hollander
                                        United States District Judge